# GOZLON-PERETZ *v.* UNITED STATES

No. 89–7370.   Argued October 30, 1990—Decided February 19, 1991

KENNEDY, J., delivered the opinion for a unanimous Court.

*Peter Goldberger,* by appointment of the Court, *post,* p. 805, argued the cause for petitioner. With him on the briefs was *Pamela A. Wilk.*

*Amy L. Wax* argued the cause *pro hac vice* for the United States. With her on the brief were *Solicitor General Starr, Acting Assistant Attorney General Mueller, Deputy Solicitor General Bryson,* and *Richard A. Friedman.*

JUSTICE KENNEDY delivered the opinion of the Court.

This case presents a problem in the interpretation of the federal drug enforcement laws and their reference to the method of postconfinement monitoring known as "supervised release." Before 1984, drug offenders sentenced to prison were required to serve terms of special parole following their incarceration. The Sentencing Reform Act of 1984 eliminated special parole and, in its place, established conditions for the new system of supervised release. To ensure the orderly implementation of this change, Congress delayed the effective date of the Sentencing Reform Act's supervised release provisions until November 1, 1987. A year before that date, however, Congress enacted the Anti-Drug Abuse Act of 1986 (ADAA), which mandates terms of supervised release for certain drug offenses. In this case we consider whether the ADAA's supervised release requirements apply to offenses committed during the interim period after the ADAA was enacted but before the Sentencing Reform Act's provisions for supervised release became effective.

I

Petitioner Moshe Gozlon-Peretz was convicted under 21 U. S. C. § 846 on one count of participation in a conspiracy to distribute in excess of a kilogram of heroin, and under 21 U. S. C. § 841(a)(1) and 18 U. S. C. § 2 on counts of distributing 240 grams of heroin and of possession with intent to distribute in excess of one kilogram of heroin. The substantive offenses occurred on February 26, 1987, nearly four months after the ADAA's enactment but eight months before the

November 1, 1987, effective date of the Sentencing Reform Act's provisions for supervised release. Following a remand by the Third Circuit for reasons not at issue here, see *United States* v. *Levy*, 865 F. 2d 551, 559–560 (1989) (en banc), the District Court sentenced petitioner to 20 years on the conspiracy count and to concurrent 15-year sentences for the substantive offenses.

At the sentencing hearing, the Government and petitioner disagreed as to whether some form of postconfinement supervision was required for petitioner's substantive offenses. At issue then, and at issue in the case before us, was the interpretation of § 1002 of the ADAA, codified at 21 U. S. C. § 841(b)(1)(A) (1982 ed., Supp. IV). Although ADAA § 1002 specifies a term of "supervised release," the Government argued in the District Court that a term of special parole was required. According to the Government, because § 1002 directs that drug offenders receive postconfinement supervision, and because drug offenders were sentenced to special parole before the ADAA was enacted, Congress intended that special parole be imposed during the interim before the effective date of the Sentencing Reform Act, November 1, 1987. Petitioner, contending that Congress intended to delay the effective date of the ADAA's supervised release provisions, argued that no form of postconfinement supervision was appropriate under the ADAA for offenses committed prior to November 1, 1987. The District Court accepted the Government's position and imposed concurrent 5-year terms of special parole for each of petitioner's substantive offenses.

The Third Circuit vacated the sentence and remanded, holding that, under the plain language of § 1002, petitioner should have been sentenced to two 5-year terms of supervised release rather than special parole. 894 F. 2d 1402 (1990). According to the Third Circuit, the supervised release provisions in § 1002 became effective on the ADAA's date of enactment, October 27, 1986, and apply to all offenses

committed after that date. Because of a split among the Courts of Appeals as to the appropriate form of postconfinement supervision for the interim period in question, we granted certiorari. 496 U. S. 935 (1990). We now affirm.

## II

### A

We first trace in more detail the relevant statutory history of the federal drug enforcement penalty scheme and of federal sentencing in general. We begin with the Controlled Substances Act, Pub. L. 91–513, Tit. II, § 401(b), 84 Stat. 1260, codified at 21 U. S. C. § 841(b). When first enacted, § 841(b) subjected offenders involved in the manufacture or distribution of Schedule I and II narcotic substances, including heroin, to a maximum of 15 years' imprisonment and, if a prison sentence was imposed, to a mandatory 3-year term of special parole. 21 U. S. C. § 841(b)(1)(A) (1982 ed.).[1] Special parole was "a period of supervision served upon completion of a prison term" and administered by the United States Parole Commission. *Bifulco* v. *United States*, 447 U. S. 381, 388 (1980). See 21 U. S. C. § 841(c) (1982 ed.), repealed, Pub. L. 98–473, Tit. II, § 224(a)(6), 98 Stat. 2030.

In 1984, as part of a larger bill, Congress enacted two statutes that altered the penalty schemes for federal drug offenders: the Controlled Substances Penalties Amendments Act, Pub. L. 98–473, Tit. II, ch. V, 98 Stat. 2068, and the Sentencing Reform Act, Pub. L. 98–473, Tit. II, ch. II, 98 Stat.

---

[1] The Controlled Substances Act established five "schedules" of narcotic and nonnarcotic substances subject to federal drug laws, codified at 21 U. S. C. § 812. Prior to 1984, 21 U. S. C. § 841(b)(1)(A) applied to offenses involving narcotics listed in Schedules I and II, those considered by Congress to present the highest potential for abuse. See 21 U. S. C. §§ 812(b)(1) and (b)(2) (1982 ed.). Persons convicted of offenses involving other illicit drugs were subject to various, lesser penalties. See 21 U. S. C. §§ 841(b)(1)(B), (b)(2) and (b)(3) (1982 ed.).

1987.[2] The Controlled Substances Penalties Amendments Act increased the maximum prison terms available under the Controlled Substances Act for offenses involving large quantities of narcotic substances to 20 years, but did not provide any term of special parole for such offenses. 21 U. S. C. § 841(b)(1)(A) (1982 ed., Supp. II).[3] Persons convicted of crimes involving lesser amounts of narcotic and nonnarcotic substances remained subject to the penalties applicable to offenses committed before the 1984 amendments, including special parole. §§ 841(b)(1)(B) and (C). Thus, while increasing the maximum terms of imprisonment for large-scale narcotics offenses, the 1984 amendments created a peculiar situation in which small-time offenders were subject to special parole, while big-time offenders were not.

Concurrent with the increases in maximum penalties for large-scale narcotics offenses, the Sentencing Reform Act of 1984 modified the penalty scheme for federal drug offenders by deleting all remaining references to special parole in the pre-1984 version of the Controlled Substances Act, but this modification did not become effective until November 1, 1987.[4] The change reflected Congress' desire to eliminate most forms of parole and to replace them with the new system of supervised release. Under the Sentencing Reform

---

[2] Both statutes were enacted as part of the Comprehensive Crime Control Act of 1984, Pub. L. 98–473, Tit. II, 98 Stat. 1976, a lengthy piece of legislation that brought about significant revisions to many other aspects of the federal criminal justice system including forfeiture, bail, and procedures for the treatment of juvenile and mentally ill defendants.

[3] Large-scale drug offenses under the Controlled Substances Penalties Amendments Act included those involving 100 grams or more of heroin, 1 kilogram or more of cocaine, and 5 grams or more of LSD. See 21 U. S. C. § 841(b)(1)(A) (1982 ed., Supp. II).

[4] As enacted, the Sentencing Reform Act provided that the elimination of special parole terms would take place on November 1, 1986. The effective date of these amendments, however, with many of the Sentencing Reform Act's other key provisions, was delayed until November 1, 1987. See Sentencing Reform Amendments Act of 1985, Pub. L. 99–217, § 4, 99 Stat. 1728.

Act's provisions for supervised release, the sentencing court, rather than the Parole Commission, would oversee the defendant's postconfinement monitoring. See 18 U. S. C. §§ 3583, 3601. The court could terminate, extend, or alter the conditions of the term of supervised release prior to its expiration. § 3583(e). In the event of a violation of the supervised release order, the court could hold a defendant in contempt. § 3583(e)(3).

Having decided upon supervised release as its preferred means of postconfinement monitoring, Congress nevertheless decided to defer its application to drug offenses. Although the Sentencing Reform Act established conditions for supervised release, and although the Act took the further step of eliminating references to special parole for most drug offenses, Congress did not take the final step of requiring supervised release for persons sentenced under the Controlled Substances Act. That step was taken two years later, when Congress enacted the ADAA, Pub. L. 99–570, 100 Stat. 3207, 3207–2 to 3207–4.

The ADAA again redefined and expanded the offense categories codified in 21 U. S. C. § 841(b) and, in so doing, increased the maximum penalties and set minimum penalties for many offenders. ADAA § 1002 created a new drug penalty classification for large-scale offenses involving certain narcotics, such as petitioner's trafficking in more than one kilogram of heroin. For first-time offenders in these high-volume narcotics crimes, Congress authorized sentences of 10 years to life imprisonment. 21 U. S. C. § 841(b)(1)(A) (1982 ed., Supp. IV).[5] For midrange violations, such as those involving between 100 grams and 1 kilogram of heroin, Congress authorized sentences of between 5 and 40 years'

---

[5] ADAA § 1002 prescribed equivalent thresholds for "mixture[s] or substance[s] containing a detectable amount" of other illicit narcotics at 5 kilograms for cocaine, 50 grams for cocaine base, 100 grams for phencyclidine (PCP), 10 grams for lysergic acid diethylamide (LSD), 400 grams for propanamide, and 1,000 kilograms for marijuana. See § 841(b)(1)(A).

imprisonment. § 841(b)(1)(B).[6] Other violations involving Schedule I or II substances were subject to a maximum of 20 years' imprisonment. § 841(b)(1)(C). The penalties for other drug offenses remained mostly unchanged, including mandatory special parole for offenses involving relatively small amounts of marijuana and hashish. See §§ 841(b)(1)(D), (b)(2) and (b)(3).

The House and Senate versions of the ADAA, in their original forms, also required that special parole terms be imposed as part of the package of penalties for major narcotics offenses under §§ 841(b)(1)(A), (B), and (C). See H. R. 5484, 99th Cong., 2d Sess. (1986); S. 2878, 99th Cong., 2d Sess. (1986). Under both bills, the special parole provisions were to become effective immediately and to apply until the effective date of the new federal sentencing system, November 1, 1987. As of that date, the House bill provided for the repeal of the special parole provisions, while the Senate bill provided that all references to special parole be changed to supervised release. See H. R. Rep. No. 99–845, p. 20 (1986); 132 Cong. Rec. 22894 (1986) (§ 608(b) of House bill); id., at 26101 (§ 1007 of Senate bill). Neither of these alternatives was adopted, however. Instead, in the final stages of the legislative process, and without explanation, Congress substituted the words "supervised release" for the words "special parole" whenever the latter term appeared in § 1002. See id., at 32728–32745. As enacted by Congress, § 1002 of the ADAA, 21 U. S. C. § 841(b)(1)(A) (1982 ed., Supp. IV), provides in relevant part:

> "Any sentence under this subparagraph shall, in the absence of . . . a prior conviction, impose a term of supervised release of at least 5 years in addition to such term of imprisonment and shall, if there was . . . a prior con-

---

[6] The equivalent thresholds under ADAA § 1002 for other mixtures or substances were 500 grams for cocaine, 5 grams for cocaine base, 100 grams for PCP (10 grams if pure), 1 gram for LSD, 40 grams for propanamide, and 100 kilograms for marijuana. See § 841(b)(1)(B).

viction, impose a term of supervised release of at least 10 years in addition to such term of imprisonment. . . . No person sentenced under this subparagraph shall be eligible for parole during the term of imprisonment imposed therein."

In similarly worded passages, Congress also required sentencing courts to impose supervised release terms of at least four and three years for first-time offenders sentenced under §§ 841(b)(1)(B) and (C), respectively, and to double those terms for repeat offenders. In contrast to other sections in the ADAA for which Congress specified November 1, 1987, as the effective date, ADAA § 1002 gave no such direction.

B

The absence of an express deferral of ADAA § 1002's effective date, coupled with the delayed effective date of the Sentencing Reform Act's provisions governing supervised release, has created a conflict of interpretation among the Courts of Appeals. The persons affected by the interpretive problem are those whose offenses occurred between October 27, 1986, the date on which ADAA was signed into law, and November 1, 1987, the effective date of the Sentencing Reform Act's provisions for supervised release. A majority of the Courts of Appeals hold, as did the District Court in this case, that sentencing courts may not impose supervised release for crimes committed before November 1, 1987, and instead require imposition of terms of special parole.[7] The Third Circuit, in reversing the District Court below, held that supervised release applies to offenses that occurred after

_____

[7] See, *Mercado* v. *United States*, 898 F. 2d 291 (CA2 1990) *(per curiam); United States* v. *Whitehead*, 849 F. 2d 849, 860 (CA4), cert. denied, 488 U. S. 983 (1988); *United States* v. *Byrd*, 837 F. 2d 179, 181, n. 8 (CA5 1988); *United States* v. *Paiz*, 905 F. 2d 1014, 1031 (CA7 1990); *United States* v. *Portillo*, 863 F. 2d 25, 26 (CA8 1988) *(per curiam); United States* v. *Levario*, 877 F. 2d 1483, 1487–1489 (CA10 1989); *United States* v. *Smith*, 840 F. 2d 886, 889–890 (CA11), cert. denied, 488 U. S. 859 (1988).

October 27, 1986, and four other Circuits accept its position, at least in part.[8]   In this Court, the Government now supports the Third Circuit's view, while petitioner still insists that Congress intended no form of postconfinement supervision for offenses committed before November 1, 1987.   We now consider which of these interpretations accords with congressional intent.

### III

### A

It is well established that, absent a clear direction by Congress to the contrary, a law takes effect on the date of its enactment.   See *Robertson* v. *Bradbury,* 132 U. S. 491, 493 (1889); *Arnold* v. *United States,* 9 Cranch 104, 119–120 (1815); see also 2 N. Singer, Sutherland on Statutory Construction § 33.06, p. 12 (C. Sands 4th rev. ed. 1986).   We find no such contrary direction in the language of § 1002 or in its evident purpose.   Turning first to the text of the statute, we note that § 1002, like many other congressional enactments, contains no provision for its effective date.   Nor is there an effective date specified for the ADAA as a whole.   Congress' silence in this regard contrasts with the express effective date provisions for other discrete sections of the ADAA.   See Pub. L. 99–570, §§ 1004(b), 1006(a)(4), 1007(b), and 1009(b).   "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."   *Russello* v. *United States,* 464 U. S. 16, 23 (1983)

---

[8] See *United States* v. *Brundage,* 284 U. S. App. D. C. 219, 225, 903 F. 2d 837, 843 (1990); *United States* v. *Figueroa,* 898 F. 2d 825, 828 (CA1 1990); *United States* v. *Blackmon,* 914 F. 2d 786, 789–790 (CA6 1990); *United States* v. *Torres,* 880 F. 2d 113 (CA9 1989) *(per curiam),* cert. denied, 493 U. S. 1060 (1990); cf. *United States* v. *Ferryman,* 897 F. 2d 584 (CA1 1990) (persons sentenced under 21 U. S. C. § 841(b)(1)(B) should receive special parole for offenses committed prior to November 1, 1987).

(internal quotation marks omitted); see *General Motors Corp.* v. *United States*, 496 U. S. 530, 541 (1990).

Nor does anything we can discern about Congress' purpose in enacting § 1002 rebut the presumption that it became effective at once. As discussed above, the Controlled Substances Penalties Amendments Act of 1984 inexplicably mandated postconfinement supervision for many small-time drug offenders, but exempted big-time narcotics offenders. See *supra,* at 400. Section 1002 removed that disparity and mandated postconfinement supervision for all Schedule I and II drug offenders. Given the apparent purpose of the legislation to rectify an earlier mistake, it seems unlikely that Congress intended the effective date to be any time other than the date of enactment.

Petitioner asks us to look to other provisions in the ADAA to find Congress' intent. He first contends that Congress must have intended to postpone all the penalty provisions of § 1002 — not just its supervised release provisions — until November 1, 1987, because to have done otherwise would have created anomalies with §§ 1007(a) and 1009(a). These sections, each specifying an effective date of November 1, 1987, authorize shorter sentences for certain offenders who cooperate with the Government. According to petitioner, if § 1002 became effective upon enactment, there would have been no possibility of sentences below the mandatory minimum for offenses committed during the period between October 27, 1986, and November 1, 1987, even though an offender otherwise would have been qualified for the exception.

Petitioner's argument has been rejected by every Court of Appeals to consider it,[9] and we likewise reject it here.

---

[9] See *United States* v. *Brundage, supra,* at 223, 903 F. 2d, at 841; *United States* v. *Charleus*, 871 F. 2d 265, 269 (CA2 1989); *United States* v. *Levy*, 865 F. 2d 551, 559, n. 4 (CA3 1989); *United States* v. *Duprey*, 895 F. 2d 303, 311 (CA7 1989), cert. denied, 495 U. S. 906 (1990); *United States* v. *Padilla*, 869 F. 2d 372, 381–382 (CA8), cert. denied *sub nom. Percheitte* v. *United States*, 492 U. S. 909 (1989); *United States* v. *Meyers*, 847 F. 2d

While petitioner is correct that § 1002 created minor anomalies with §§ 1007 and 1009, Congress recognized these potential problems and fixed them. In December 1987, Congress enacted legislation ensuring that the provisions permitting departures from mandatory minimum sentences for cooperating defendants would apply to offenses committed before November 1, 1987. See Sentencing Act of 1987, Pub. L. 100–182, § 24, 101 Stat. 1271. This corrective statute can be explained only if Congress believed that the mandatory minimum penalties had gone into effect as of the ADAA's date of enactment, October 27, 1986. "Of course, the view of a later Congress does not establish definitively the meaning of an earlier enactment, but it does have persuasive value." *Bell* v. *New Jersey*, 461 U. S. 773, 784 (1983). We believe that Congress' later enactment weighs against petitioner's favored reading of the statute.

Petitioner next argues that, even if ADAA § 1002 generally became effective on its date of enactment, we should read the delayed effective date provision in ADAA § 1004 as delaying the effective date of the supervised release provisions in ADAA § 1002 as well. ADAA § 1004(b) provides that all remaining references to "special parole" in the Controlled Substances Act were to be changed to "supervised release," but that the amendments made by "this section" were not to take effect until November 1, 1987. By its plain meaning, "this section" refers not to the entire ADAA, nor even to one title or chapter in that enactment. Rather, it refers only to the general changeover provision in § 1004, which was intended to amend those provisions in the Controlled Substances Act that retained the term "special parole" as of November 1, 1987.[10] Because § 1002 made the change from special parole to supervised release independent of § 1004, the ADAA's

---

1408, 1415 (CA9 1988); *United States* v. *Garcia*, 879 F. 2d 803, 804 (CA10 1989).

[10] These sections were 21 U. S. C. §§ 841(b)(1)(D), 841(b)(2), 845(a), 845(b), 845a(a), 960(b)(4), and 962(a) (1982 ed., Supp. IV).

general changeover provision, including that section's delayed effective date, does not apply here. A specific provision controls one of more general application. *Crawford Fitting Co.* v. *J. T. Gibbons, Inc.*, 482 U. S. 437, 445 (1987).

We doubt, moreover, that Congress would intend to delay § 1002's provisions for supervised release and make its other provisions effective at once. "In determining the meaning of the statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." *Crandon* v. *United States*, 494 U. S. 152, 158 (1990). Section 1002 grouped the ADAA's penalty provisions—imprisonment, fines, and supervised release—into a single paragraph for each of the new offense levels established in 21 U. S. C. § 841(b)(1) (1982 ed., Supp. IV). It is unlikely that the third part of the three-part penalty scheme was postponed for a year while the first two took effect at once. Based on our review of the ADAA, we cannot say that Congress gave a clear direction to delay the effective date of § 1002's supervised release provisions.

B

Having reviewed the language and structure of the ADAA itself, we now consider the effect of the Sentencing Reform Act's provisions for imposing and revoking supervised release. Petitioner argues that because these provisions did not become effective until November 1, 1987, the term "supervised release" as used in the ADAA had no significance before that date, and courts had no power to impose it. We do not agree. Supervised release is a unique method of post-confinement supervision invented by the Congress for a series of sentencing reforms, including those for drug offenders. The power, and the duty, to impose supervised release is explicit in the ADAA itself as enacted in 1986. While the definition of the term "supervised release" is not set forth in the ADAA, it was set forth in the enacted, though not yet effective, Sentencing Reform Act as early as 1984. It is not

uncommon to refer to other, related legislative enactments when interpreting specialized statutory terms. See, *e. g.*, *Oscar Mayer & Co.* v. *Evans*, 441 U. S. 750, 756 (1979); *Kokoszka* v. *Belford*, 417 U. S. 642, 650 (1974); *Northcross* v. *Memphis Bd. of Education*, 412 U. S. 427, 428 (1973). That the Act referred to has its own, later effective date does not defeat the utility of this interpretational device. Courts may refer to enacted, but not yet effective, legislation to interpret statutory terms if the legislature intends the reference. At the time the ADAA was enacted, the Sentencing Reform Act, though its own scheme was not yet operational, had all the weight and dignity of a deliberate, considered enactment of the Congress, presented to, and approved by, the President. The Sentencing Reform Act was the origin of the specialized term "supervised release," and the ADAA used the term in legislating upon the same subject matter. The reasonable assumption is that when Congress adopted the ADAA and used the term "supervised release," it knew of the full definition in the existing Sentencing Reform Act and legislated with reference to it. See *Morissette* v. *United States*, 342 U. S. 246, 263 (1952).

Further, there is a plausible explanation for the disjunction in the statutes. The class of offenders here involved are those who committed drug offenses between October 27, 1986, and November 1, 1987. In the great majority of those cases, including the case now under review, it was not likely that an offender would be released from custody before the November 1, 1987 date. The draftsman might well have concluded that in all such cases the Sentencing Reform Act would be effective at the time the district court would begin to exercise its duties under the supervised release procedures. See Slawsky, Looking at the Law, 52 Fed. Probation 86 (June 1988).

In reaching this conclusion, we also reject the holdings of the District Court and some Courts of Appeals that, because the statutory provision for imposing and revoking supervised

release did not go into effect until November 1, 1987, the rules governing special parole should apply to crimes committed in the interim period before that date. The plain language of § 1002 forecloses such a result. See *Hallstrom* v. *Tillamook County*, 493 U. S. 20, 25–26 (1990). Admittedly, the statutory scheme might have appeared more logical had Congress not made the last minute switch from special parole to supervised release.[11] That, however, does not justify ignoring Congress' mandate. The term "supervised release" has specific meaning, and we have no reason to doubt that Congress used the term knowing that it differs from the term "special parole," and with the intent that sentencing courts follow the direction of the statute. We hold that for offenses committed in the interim period between October 27, 1986, and November 1, 1987, supervised release applies for all drug offenses in the categories specified by ADAA § 1002.

## C

Finally, petitioner invokes the "rule of lenity," contending that the absence of an effective date provision in ADAA § 1002 creates an ambiguity that must be construed in his

---

[11] For example, petitioner contends that Congress' last-minute switch from special parole to supervised release created inconsistencies with other penalty provisions in the Controlled Substances Act, specifically 21 U. S. C. § 845, which prohibits distribution of drugs to minors, and 21 U. S. C. § 845a, which prohibits the distribution of drugs within 1,000 feet of a school. For offenses committed prior to November 1, 1987, §§ 845(a) and 845a(a) provide special parole terms in multiples of those authorized by § 841(b)(1) for the same type and quantity of drug. Petitioner notes that if defendants charged with crimes committed between October 27, 1986, and November 1, 1987, are to receive terms of supervised release, not special parole, the enhancement provisions in §§ 845(a) and 845a(a) might not apply. Assuming without deciding that petitioner is correct, these minor inconsistencies nevertheless are not sufficient to overcome the strong presumption in favor of October 27, 1986, being the effective date for § 1002. Congress' possible lack of attention to some of the collateral effects of the change from special parole to supervised release does not justify our disregard of the change itself.

favor. See *Bifulco* v. *United States*, 447 U. S., at 387; *Lewis* v. *United States*, 445 U. S. 55, 65 (1980). We do not believe, however, that the rule of lenity applies here. "The rule comes into operation at the end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers." *Callanan* v. *United States*, 364 U. S. 587, 596 (1961). Applying well-established principles of statutory construction, we have concluded that Congress, through its use of plain language, intended narcotics offenders to receive supervised release for crimes committed between October 27, 1986, and November 1, 1987. While § 1002 may have created some minor inconsistencies with other statutory provisions, its provisions for postconfinement supervision are not ambiguous. This case involves no ambiguity for the rule of lenity to resolve.

For the reasons set forth above, the judgment of the Court of Appeals is affirmed.

*It is so ordered.*