**Angel PEREZ–CARABALLO Petitioner,**

v.

**UNITED STATES of America,
Respondent.**

Civ. No. 91–1829 (JAF).
Crim. No. 87–685.

United States District Court,
D. Puerto Rico.

Dec. 31, 1991.

Angel Perez–Caraballo, pro se.

Everett M. de Jesús, Trial Atty., U.S.
Dept. of Justice, San Juan, P.R., for respondent.

## OPINION AND ORDER

FUSTE, District Judge.

On May 11, 1988, petitioner Angel Pérez–Caraballo pled guilty to one count of a multi-count superseding indictment charging conspiracy to possess with intent to distribute amounts of cocaine and heroin in excess of one kilogram in violation of 21 U.S.C. § 841(a)(1) and § 846. Pérez–Caraballo was first sentenced to a 20–year term of imprisonment and fined $100,000. (Criminal Docket Document No. 875). Thereafter, petitioner filed a Fed.R.Crim.P. 35 motion seeking reduction of sentence.[1] (Docket Document No. 1029). No request was made to reduce the fine. On Decem-

---

1. Because the great majority of the activities giving rise to petitioner's offense occurred prior to November 1, 1987, he was sentenced under the pre-Guidelines statute. Therefore, the prior version of Fed.R.Crim.P. 35(b) was in effect, which allowed defendant to make a motion to reduce a sentence within 120 days of its imposition.

ber 6, 1988, we entered an Order amending the judgment and reducing the term of imprisonment to ten years.[2] (Docket Document Nos. 1054, 1112). In October 1989, petitioner *pro se* filed further motions under Rule 35 seeking reduction of his sentence and modification of his fine. (Docket Document Nos. 1165, 1167). After the government answered these motions, we ruled that, as to the fine reduction, the court was without jurisdiction to reduce the fine.[3] (Docket Document No. 1217). Petitioner has now filed a motion under 28 U.S.C. § 2255 again seeking to reduce or remit the fine.[4] While we do have some sympathy for petitioner's position, for the reasons stated below we must deny Pérez–Caraballo's motion and dismiss his petition.

We first note that we dismiss Pérez–Caraballo's section 2255 petition without an evidentiary hearing. The court must, therefore, find that, accepting petitioner's allegations as true, he is entitled to no relief; however, the court does not have to accept as true allegations that "are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *United States v. Michaud*, 925 F.2d 37, 39 (1st Cir.1991) (quoting *Dziurgot v. Luther*, 897 F.2d 1222, 1225 (1st Cir.1990) (per curiam). "Even if a section 2255 motion is facially adequate, a hearing is not necessary before dismissal if the motion is 'conclusively refuted as to the alleged facts by the files and records of the case.'" *Myatt v. United States*, 875 F.2d 8, 11 (1st Cir.1989) (quoting *Moran v. Hogan*, 494 F.2d 1220, 1222 (1st Cir.1974)); *Pérez–Calo v. United States*, 757 F.Supp. 1, 2 (D.P.R. 1991). Applying these standards, we find no need for a hearing to rule on petitioner's motion.

Pérez–Caraballo first argues that the court did have jurisdiction to decide his second Rule 35(b) motion. We disagree. Petitioner filed the motion in October 1989, more than fifteen months after sentence was imposed. There is no doubt here that the court was (and remains) without jurisdiction to hear an untimely filed pre–Guidelines Rule 35(b) motion. *See United States v. Pellerito*, 918 F.2d 999, 1003 (1st Cir. 1990).

Next, petitioner raises constitutional claims based on violations of the fifth and eighth amendments. He argues that his fine is disproportionate and, as such, violates the eighth amendment. He also claims that since the fine is in excess of the maximum authorized by the statute to which he pled, his sentence violated the double jeopardy clause of the fifth amendment. Further, in an amendment to his memorandum of law, petitioner also raises a claim based on the "equal protection component" of the fifth amendment due process clause arguing that he is receiving disparate treatment in prison because of his inability to pay the fine.

First, we find that his eighth amendment claim is premature. In *Santiago v. United States*, 889 F.2d 371, 373–74 (1st Cir.1989) (per curiam), the United States Court of Appeals for the First Circuit found that petitioner should first turn to administrative remedies to make a determination of his inability to pay a stand-committed fine before resorting to a motion under section 2255. 18 U.S.C. § 3569; Bureau of Prisons regulations, 28 C.F.R. §§ 571.50–571.56 (1991). *See also United States v. Mazzaferro*, 907 F.2d 251, 254 (1st Cir.1990); *United States v. Levy*, 897

---

2. We explained in the Order that, although the penalty provision of the Anti–Drug Abuse Act of 1986, Pub.L. 99–570, 100 Stat. 3207, 21 U.S.C. § 841(b)(1)(A) ("ADAA"), applied to this case, we had erroneously sentenced based on the pre–1986 version of section 841(b). Under the pre–1986 statute, we estimated that a defendant sentenced to a 20–year term of imprisonment would have been eligible for parole after serving 7–10 years. The court, therefore, amended petitioner's judgment to comply with the provisions of the ADAA and sentenced him to a 10–year prison term.

3. Although in our order we referred to the post–1987 amendment to Rule 35(b) as granting no authority to reduce the fine, our decision was based on the fact that petitioner filed his second Rule 35(b) motion more than 120 days after imposition of sentence, at which point the court had been divested with jurisdiction to reduce or modify the sentence.

4. Petitioner raises no claim as to other aspects of his sentence.

F.2d 596, 598 (1st Cir.1990) (where prisoner is serving a "mixed" sentence—combining a substantial, noncontingent term of imprisonment with a stand-committed fine—court should refuse to rule on the fine's constitutionality until administrative remedies are exhausted or prisoner is on the verge of serving time in consequence of the fine's nonpayment).

Since petitioner was sentenced for offenses committed prior to November 1, 1987, the date section 3569 was repealed, he is entitled to apply for relief under these administrative procedures. *See United States v. Ellis,* 907 F.2d 12, 14 (1st Cir. 1990) (Noting that 18 U.S.C. § 3569 continues to apply to offenses committed before November 1, 1987), *cert. denied,* —— U.S. ——, 111 S.Ct. 790, 112 L.Ed.2d 852 (1991). Also, since petitioner is serving a "mixed" sentence as was the prisoner in *Levy,* there is no need at this point "to speculate unnecessarily about the possibility of future harm." 897 F.2d at 598. We, therefore, rule that petitioner must (and has the right to) exhaust the administrative remedy available to him under section 3569 and the Bureau of Prisons regulations.

■ Petitioner's second claim that he was improperly sentenced, while understandable given the complicated amendment history of 21 U.S.C. § 841(b), is also without merit. *See Gozlon–Peretz v. United States,* —— U.S. ——, 111 S.Ct. 840, 844–47, 112 L.Ed.2d 919 (1991) (statutory history of federal drug enforcement penalty scheme traced); *United States v. Ferryman,* 897 F.2d 584, 586–88 (1st Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 90, 112 L.Ed.2d 62 (1990) (same). In outlining the statutory history, these cases provide the response to petitioner's claim.

At sentencing it was established that the penalty provisions of the Anti–Drug Abuse Act of 1986, Pub.L. 99–570, 100 Stat. 3207, 3207–2 to 3207–4 ("ADAA"), applied in petitioner's case since, although a majority of the acts giving rise to the offense occurred between 1980–1985, Pérez–Caraballo re-

turned to the same activities during 1987. (Docket Document No. 1253, *Sentencing Transcript* at 4–7). Section 1002(2) of ADAA, 21 U.S.C. § 841(b)(1)(A), created a new penalty for major drug manufacturers and distributors and revised the amounts of drugs which would trigger the penalties. Petitioner pled guilty to count 2, which charged involvement with over 1 kilogram of cocaine or heroin, which in turn placed petitioner under section 841(b)(1)(A). The statute authorized a ten-year minimum and life-maximum term of imprisonment. Also a fine of up to $4,000,000 could be imposed on an individual convicted under this statute. The statute authorized a prison term, a fine or both. In *Gozlon–Peretz,* the Supreme Court confirmed that ADAA section 1002 became effective the date of its enactment on October 27, 1986. —— U.S. at ——, 111 S.Ct. at 846–48.

Because of his criminal activity in 1987, petitioner was sentenced under the 1986 ADAA penalty provision. The 10–year prison term and the $100,000 fine were well within the statutory authorization. Therefore, the court committed no fifth amendment violation in sentencing defendant.

■ Petitioner's final contention also merits discussion. In an addendum to his memorandum of law, Pérez–Caraballo submitted a memorandum from the warden at the federal prison where he is incarcerated. The memorandum deals with the issue of inmate financial responsibility. It is based on an amendment to the Bureau of Prisons regulation dealing with the Inmate Financial Responsibility Program ("IFRP"), 28 C.F.R. §§ 545.10–545.11, which became effective on June 20, 1991. *See* 56 Fed.Reg. 23,476. The IFRP refers to a set of procedures promulgated by the Bureau to encourage and assist inmates in developing a financial plan to meet their obligations which are listed in section 545.11(a). These obligations, in order of priority, are: (1) Special Assessments imposed under 18 U.S.C. § 3013; (2) court-ordered restriction;[5] (3) fines and court costs; (4) state

---

5. While we are not sure, we think that the word "restriction" used here should in fact be "restitu-

tion" under 18 U.S.C. § 3556.

and local court obligations; and (5) other federal government obligations.

The section of the IFRP to which petitioner objects is section 545.11(d), which describes the effects of non-participation in the IFRP. Refusal to participate in the program or failure to comply with the inmate's financial plan results in: (1) where applicable, notification of the Parole Commission; (2) loss of furlough (except for emergencies); (3) loss of performance, bonus and vacation pay above maintenance pay; (4) no work assignment outside the secured perimeter of the facility; (5) no participation in UNICOR (Federal Prisons Industries, Inc., 28 C.F.R. § 545.50); (6) no purchases in excess of monthly spending limitation; (7) quarters in the lowest housing status; (8) no placement in community-based programs; and (9) no release gratuity unless approved by the warden.

Pérez–Caraballo argues that his present inability to pay the fine may cause him to default on his IFRP and subject him to the loss of the above-mentioned privileges. In that sense, he argues that there is not only a future effect caused by his indigence—his stand-committed status at the time of release—but that present consequences also attach to his inability to meet the fine. He submits an IFRP withdrawal request which was voided for insufficient funds and a notice stating that if these obligations are not satisfied, he will be placed in the "refusal" status of the IFRP. Again, while we are sympathetic to petitioner's plight, we think it premature to address the merits of his claim for the following reasons.

First, as we ruled above, petitioner is entitled to the administrative procedures to determine indigency under 28 C.F.R. §§ 571.50–571.76. If it is determined that the inmate is indigent, we think that petitioner's claim would be moot as he would be liable for only that amount of the fine that he would be able to pay during the term of his incarceration using funds earned in prison employment.

Also, given the structure of the IFRP, as well as the Bureau's comments in the Federal Register, we think that petitioner's inability to pay the fine should not place him in the "failure to comply" category and subject him to the loss of privileges. Under sections 545.10 and 545.11, Bureau staff should assist each inmate in developing an individualized financial plan to meet his obligations, as well as monitoring the inmate's progress. Presumably, therefore, petitioner's financial ability to pay the fine, as well as his other obligations, have been taken into account in developing his financial plan. In the responses to comments to the proposed rule, the Bureau confirms that:

Financial plans ordinarily can be developed for most inmates because they are eligible for, and receive, compensation for work performed within the institution. Existing regulations (28 C.F.R. 545.10) provide that staff will assist the inmate in developing a financial plan. Implementing instructions to staff specify that an inmate who is unable to secure employment in UNICOR or advance beyond maintenance pay due to conditions beyond the inmate's control is to be considered temporarily exempt from participation and, consequently not subject to the effects of non-participation.

56 Fed.Reg. 23,475–76. According to the Bureau's own regulations, petitioner's financial status should not subject him to the consequences of the 1991 amendment to section 545.11(d).

Finally, even if the institution does declare petitioner a non-participant in the IFRP and subject to the loss of privileges specified in section 545.11(d) solely based on the court-imposed fine, we think that a section 2255 petition would still be premature. The Bureau of Prisons has in place an Administrative Remedy Procedure, whereby an inmate may "seek formal review of a complaint which relates to any aspect of his imprisonment if less formal procedures have not resolved the matter." 28 C.F.R. § 542.10. *See* 28 C.F.R. §§ 542.-10–542.16. If, in fact, petitioner's inability to pay the fine results in the loss of any privileges, we think that he must first exhaust the administrative remedies in place before initiating judicial action under section 2255. Especially here, where the regulations themselves seem to provide a reme-

dy for petitioner, we find it premature to rule on the potential constitutional issues.

### Conclusion

While we deny Pérez–Caraballo's section 2255 motion, we want to be clear about our ruling so that petitioner may seek relief within the administrative apparatus of the Bureau of Prisons.

We restate our ruling that because petitioner is serving a pre-Guidelines sentence, he is entitled to invoke the procedures authorized by 18 U.S.C. § 3569 and Bureau of Prisons regulations, 28 C.F.R. §§ 571.50–571.56 (1991), to determine petitioner's ability to pay the fine.

Further, to the extent that Bureau of Prisons officials fail to properly implement their own regulations, Pérez–Caraballo is entitled to redress using the Administrative Remedy Procedure established under 28 C.F.R. §§ 542.10–542.16.

Because these remedies are available to and must be exhausted by petitioner prior to raising potential constitutional claims, we find that Pérez–Caraballo's section 2255 motion is premature.

We, therefore, dismiss the motion without prejudice to petitioner filing a section 2255 motion around his release date if the fine imposed would result in extending his term of imprisonment.

IT IS SO ORDERED.