# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3221

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| J.W.T., | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:   March 9, 2004

Filed:   May 21, 2004

_____

Before WOLLMAN, MORRIS SHEPPARD ARNOLD, and COLLOTON, Circuit
Judges.

_____

COLLOTON, Circuit Judge.

J.W.T., a juvenile, appeals from the sentence imposed after revocation of his
probation.  He argues that the district court erred by relying on an  amendment to 18
U.S.C. § 5037, which was enacted after his original act of juvenile delinquency, as
authority to impose a period of "juvenile delinquent supervision" following the
revocation of probation.  We reverse.

I.

On February 18, 2002, J.W.T. struggled with and fled from a Bureau of Indian Affairs police officer who was attempting to arrest him. J.W.T. eventually was apprehended, and he pleaded guilty to assaulting a federal officer in violation of 18 U.S.C. §§ 111(b) and 5032. On December 12, 2002, the district court adjudicated J.W.T. a delinquent, and placed him on probation until age 19. The government placed J.W.T. in a drug treatment program in South Dakota, but he absconded briefly from the facility on May 13, 2003. When the treatment staff discharged J.W.T. for this violation of program rules, he was placed in a different facility. On June 1, 2003, J.W.T. ran away yet again, and he was arrested in Utah in July 2003.

The district court held a probation revocation hearing on July 29, 2003. J.W.T. admitted that he failed to notify his probation officer prior to a change of residence, and that he failed to reside in a community corrections center as required. The district court revoked J.W.T.'s probation, ordered a supplemental presentence report, and set a dispositional hearing.

The supplemental presentence report noted that 18 U.S.C. § 5037 authorized the court to order a period of juvenile delinquent supervision to follow official detention. The pertinent provision of § 5037 was enacted on November 2, 2002, as § 12301 of the 21st Century Department of Justice Appropriations Authorization Act. *See* Pub. L. No. 107-273, 116 Stat. 1758. Thus, the amendment authorizing juvenile delinquent supervision was enacted *after* J.W.T.'s underlying act of delinquency, but *before* he violated the conditions of probation.

J.W.T. objected to a term of supervision. He argued that because the statutory amendment was passed after the date of his underlying act of delinquency, the court could not order a term of supervision as part of the sanction imposed after the revocation of probation. Rejecting this contention, the district court committed

J.W.T. to official detention for 14 months, and imposed a term of judicial delinquent supervision, which the judgment referred to as "supervised release," until J.W.T.'s 21st birthday.

## II.

It is uncontested that at the time of J.W.T.'s act of juvenile delinquency in February 2002, the district court could not order a term of supervised release after a period of official detention. It is also clear that the November 2002 amendment to 18 U.S.C. § 5037 authorized district courts to impose supervised release, and that the amendment was enacted after J.W.T. committed the violation of probation that led to his resentencing. There is disagreement, however, as to whether the imposition of supervised release should be considered a sanction for the original act of delinquency (in which case the amendment would be applied retrospectively), or for the violation of probation (in which case the amendment need be applied only prospectively). The district court concluded that it was sentencing J.W.T. for a probation violation that occurred after the effective date of the amendment, such that imposition of supervised release was authorized by statute and consistent with the *Ex Post Facto* Clause of the Constitution.

The Supreme Court's decision in *Johnson v. United States*, 529 U.S. 694 (2000), however, makes clear that the term of supervised release must be considered part of the penalty for J.W.T.'s original act of delinquency. In *Johnson*, the Sixth Circuit had disposed of an *ex post facto* challenge by holding that revocation of supervised release merely imposed punishment for violating the conditions of supervised release, rather than for the original offense. *Id*. at 699-700. On this theory, "if the violation of the conditions of supervised release occurred after the [statutory change], . . . the new law could be given effect without applying it to events before its enactment." *Id*. at 700. The Supreme Court rejected that logic, noting the "serious constitutional questions that would be raised by construing revocation and

reimprisonment as punishment for the violation of the conditions of supervised release." *Id*. Accordingly, *Johnson* holds that post-revocation penalties should be attributed to the "original offense." *Id*. at 701. *Johnson* involved penalties imposed after revocation of supervised release, as opposed to revocation of probation, but we see no basis to treat these situations differently.

The government does not adopt the district court's view, but argues that section 5037 was not applied retrospectively for a different reason. The government asserts that because the amendment was enacted before the *disposition* of J.W.T.'s original act of delinquency in December 2002, even though the change became effective after the *act* of delinquency in February 2002, the district court's application of the amendment concerning supervised release was not retrospective. The relevant date for determining whether the amendment is retrospective, however, is the date of the original offense or act of delinquency. The Supreme Court made this point abundantly clear in *Miller v. Florida*, 482 U.S. 423, 427, 430-31 (1987), where it invalidated state sentencing guidelines that went into effect between the date of the defendant's offense and the date of his sentencing. We thus reject the government's position.

Because the term of supervised release is a sanction for J.W.T.'s original act of delinquency committed in February 2002, we must address whether Congress intended the November 2002 amendment to apply retroactively. If so, we must then consider whether retroactive application of the statute to J.W.T. violates the *Ex Post Facto* Clause. We review these legal questions *de novo*.

The Supreme Court in *Johnson* reaffirmed that "one of the most basic presumptions of our law" is that "legislation, especially of the criminal sort, is not to be applied retroactively." 529 U.S. at 701. Among other things, this presumption reduces the potential for conflict between legislation and the *Ex Post Facto* Clause. In light of this presumption, the Court explained that a statute burdening private

-4-

interests will be deemed prospective in application absent a "clear statement" that Congress intended retroactive effect. *Id*.

In *Johnson*, the Court was confronted with a statute that authorized the district court to impose a term of supervised release following the reimprisonment of an offender who had violated the conditions of an initial term of supervised release. *Id*. at 698-99. The Court found nothing in the statute to suggest that Congress intended the amendment to apply retroactively. Thus, the Court applied the "general rule" that a statute takes effect on the date of its enactment, and declined to give the sentencing change retroactive effect. *Id*. at 702.

In this case, we likewise see nothing to indicate that Congress intended the November 2002 amendments to 18 U.S.C. § 5037 to be retroactive. The subtitle concerning juvenile disposition hearings, which added the authorization for supervised release, specifies no effective date. The general rule is that when a statute has no effective date, "absent a clear direction by Congress to the contrary, [it] takes effect on the date of its enactment." *Gozlon-Peretz v. United States*, 498 U.S. 395, 404 (1991). Therefore, we find no clear statement that Congress intended the amendment to apply retroactively, and we hold that the amendment authorizing juvenile delinquent supervision does not apply to acts of delinquency committed prior to November 2, 2002.

Because 18 U.S.C. § 5037 did not provide for a term of juvenile delinquent supervision at the time of J.W.T.'s original act of delinquency, a sentence of supervised release may not be imposed. Accordingly, we vacate the term of supervised release, and remand to the district court for entry of an amended judgment consistent with this opinion.

_____