PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-4523
_____

UNITED STATES OF AMERICA

v.

KELLY L. HUFF,

Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D. C. No. 06-cr-00029)
District Judge: Honorable Kim R. Gibson

_____

Submitted Under Third Circuit LAR 34.1(a)
October 23, 2012

Before: HARDIMAN, GREENAWAY, JR., and
VANASKIE, *Circuit Judges*.

(Opinion Filed: January 9, 2013)

Donovan J. Cocas
Stephanie L. Haines
Rebecca R. Haywood
Office of United States Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219-0000
        *Attorneys for Plaintiff-Appellee*

Chris R. Eyster
Suite 304
100 Ross Street
Pittsburgh, PA 15219-2013
        *Attorney for Defendant-Appellant*

—————————————————

OPINION OF THE COURT
—————————————————

HARDIMAN, *Circuit Judge*.

Kelly Huff appeals the District Court's judgment of sentence following the revocation of her supervised release. Huff contends that her sentence of ten months' incarceration was substantively unreasonable. Because Huff was unconditionally released from custody on August 31, 2012, we will dismiss her appeal as moot.

I

In July 2008, Huff pleaded guilty to conspiracy to distribute 50 grams or more of cocaine base and 500 grams or

more of powder cocaine in violation of 21 U.S.C. § 846. The District Court sentenced her to twelve months' imprisonment to be followed by three years of supervised release. Because Huff already had spent more than a year in prison while awaiting trial, her period of supervised release began on July 22, 2008.

In August 2010, the United States Probation Office filed a Petition on Supervised Release in which it informed the District Court that Huff had violated the conditions of her supervised release by failing to attend mental health treatment, failing to notify the Probation Office about contact with law enforcement, and failing to file monthly supervision reports for four consecutive months. Huff waived a hearing and agreed to be placed in home detention for three months, and the court entered an order to that effect.

In April 2011, the Probation Office filed a second Petition on Supervised Release after Huff was charged with driving under the influence, endangering the welfare of children, improper vehicle child restraint, public drunkenness, and failure to stop at a red light. The Petition also stated that Huff had been non-compliant with other aspects of the terms of her supervision.

On December 6, 2011, the District Court held a hearing to consider the alleged violations, which Huff conceded. Huff and her counsel urged the Court to impose home supervision so Huff could continue to care for her two children. Citing Huff's continued inability or unwillingness to comply with the conditions of her supervision, the District Court denied Huff's request for leniency. Instead, the District Court revoked Huff's supervised release and sentenced her to ten months' incarceration with no subsequent period of supervised release.

3

Huff filed a notice of appeal on December 7, 2011.  She argues that her sentence was substantively unreasonable. Significantly, however, Huff was released from custody on August 31, 2012.

II

We begin, as we always do, with the question of jurisdiction.  The federal courts are courts of limited jurisdiction, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), and our power to render judgment is circumscribed by the Article III requirement that a live case or controversy exist throughout all stages of litigation, including appellate review, *see* U.S. Const. art. III, § 2; *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990).  This requirement is satisfied when the parties "continue to have a 'personal stake in the outcome' of the lawsuit."  *Lewis*, 494 U.S. at 478 (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983)).  When the parties lose their personal stake in the outcome, the case becomes moot and must be dismissed, even if it once was a live controversy at an earlier stage of the proceedings.  *See Davis v. FEC*, 554 U.S. 724, 732–33 (2008).

If Huff were still serving her ten-month sentence, or if she were still subject to a term of supervised release, no mootness concerns would exist.  *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *United States v. Jackson*, 523 F.3d 234, 241 (3d Cir. 2008) ("[I]f a defendant who is serving a term of supervised release elects to challenge only his sentence of supervised release, he has raised a live case or controversy under Article III such that a court will have jurisdiction over his appeal.").  But "[o]nce the convict's sentence has expired . . . some concrete and continuing injury other than the now-ended incarceration or parole—some 'collateral consequence' of the

conviction—must exist if the suit is to be maintained." *Spencer*, 523 U.S. at 7; *see also United States v. Kissinger*, 309 F.3d 179, 181 (3d Cir. 2002) ("[O]nce a litigant is unconditionally released from criminal confinement, the litigant must prove that he or she suffers a continuing injury from the collateral consequences attaching to the challenged act.").

In *Sibron v. New York*, the Supreme Court carved a narrow exception to this rule by allowing the presumption of collateral consequences when a litigant challenges a criminal conviction. 392 U.S. 40, 55–56 (1968). However, in *Spencer v. Kemna*, the Court held that *Sibron*'s presumption of collateral consequences does not apply to parole revocations. 523 U.S. at 12. Likewise, in *United States v. Kissinger*, we extended *Spencer* to an appeal involving a probation violation because we could discern no "distinction between parole and probation that would justify distinguishing *Spencer*." 309 F.3d at 181. In the years since *Kissinger*, panels of our Court extended *Spencer* to revocations of supervised release,[1] and we suggested in dicta in *United States v. Jackson* that *Spencer* applied in this context, *see Jackson*, 523 F.3d at 238, 241. Today, we hold precedentially that *Sibron*'s presumption of collateral consequences does not apply to supervised release revocations. Accordingly, consistent with *Spencer*, a litigant who is unconditionally released from

---

[1] *See, e.g.*, *United States v. Williams*, 373 F. App'x 186, 187 (3d Cir. 2010); *United States v. Ebersole*, 263 F. App'x 251, 254 & n.5 (3d Cir. 2008); *United States v. Robinson*, 39 F. App'x 723, 725 (3d Cir. 2002); *see also United States v. McHugh*, 389 F. App'x 127, 131 (3d Cir. 2010) (applying *Spencer* and *Kissinger* to the supervised release context without discussion); *United States v. Simmons*, 353 F. App'x 689, 690 (3d Cir. 2009) (applying *Kissinger* without discussion).

custody must show that she will, in fact, suffer collateral consequences from the supervised release revocation to present a live case or controversy.

This conclusion follows from our holding in *Kissinger*, from the rulings of our sister circuits, and from Congress's intent in replacing the parole regime with supervised release. In *Kissinger*, we implied that *Spencer* may be applied to revocations of supervised release because we acknowledged and relied upon decisions of other courts of appeals that applied *Spencer* in that context. *See Kissinger*, 309 F.3d at 181; *see also United States v. Meyers*, 200 F.3d 715, 721 n.2 (10th Cir. 2000) ("This court can discern no relevant differences between parole and supervised release which would militate against the applicability of *Spencer*."); *United States v. Clark*, 193 F.3d 845, 847–48 (5th Cir. 1999) (per curiam) (applying *Spencer* and dismissing as moot a challenge to the district court's extension of supervised release); *United States v. Probber*, 170 F.3d 345, 348–49 (2d Cir. 1999) (applying *Spencer* and dismissing as moot a challenge to the revocation of supervised release). Subsequently, other courts of appeals also have concluded that *Spencer* extends to supervised release revocations. *See, e.g.*, *United States v. Hardy*, 545 F.3d 280, 284 (4th Cir. 2008); *United States v. Duclos*, 382 F.3d 62, 66 (1st Cir. 2004).

In *Kissinger*, we also discussed the similarities between probation and supervised release, including the fact that both are imposed by the judiciary, *see* 18 U.S.C. § 3583(a) (supervised release); 18 U.S.C. § 3565(a) (probation), revocation in both contexts is heard by the judiciary, *see* 18 U.S.C. § 3583(e)(3) (supervised release); 18 U.S.C. § 3565(a)(2) (probation), and the conditions the judiciary is permitted to impose are identical for probation and supervised release, *see United States v. Evans*,

6

155 F.3d 245, 250–51 (3d Cir. 1998) (comparing 18 U.S.C. § 3563(b) (probation), with 18 U.S.C. § 3583(d) (supervised release)). *Kissinger*, 309 F.3d at 181.

Finally, extending *Spencer*'s rule from the parole context to the supervised release context makes sense in light of Congress's decision to "eliminate[] most forms of parole in favor of supervised release" in the Sentencing Reform Act of 1984. *Johnson v. United States*, 529 U.S. 694, 696–97 (2000); *see also Gozlon-Peretz v. United States*, 498 U.S. 395, 400 (1991).

\*     \*     \*

In sum, we agree with our sister courts of appeals that collateral consequences should not be presumed in cases, such as this one, that challenge revocations of supervised release. Huff has not argued that she will, in fact, suffer any collateral consequences. It follows, therefore, that Huff's unconditional release from prison renders this case moot. Accordingly, we must dismiss her appeal for lack of jurisdiction.