FILED
United States Court of Appeals
Tenth Circuit

February 3, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

RICHARD ADRIAN SANCHEZ,

Defendant - Appellant.

No. 12-3242
(D.C. No. 5:11-CR-40085-JAR-1)
(D. Kansas)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **McKAY**, and **MURPHY**, Circuit Judges.

After examining the briefs and appellate record, this court has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). Accordingly, we

honor the parties' requests and order the case submitted without oral argument.

Defendant-appellant, Richard Adrian Sanchez, was charged in a one-count

indictment with possession with intent to distribute more than 500 grams of

methamphetamine, in violation of 21 U.S.C. § 841(a)(1). The charge related to

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

drugs found in Sanchez's vehicle after he was stopped for a traffic violation. At Sanchez's trial, Brent Hogelin, a Lieutenant with the Kansas Highway Patrol, testified that he and another officer were running a ruse drug checkpoint on Interstate 70 in Wabaunsee County, Kansas. Hogelin observed a blue Chrysler Pacifica with Missouri tags exit the freeway onto Tallgrass Road, an unlit gravel road with no services or businesses. Tallgrass Road was the first exit after the signs on the freeway announcing the ruse drug checkpoint.

Hogelin decided to follow the Pacifica because it did not turn around and reenter the freeway after the driver should have realized there were no services. When the Pacifica made a right turn without signaling, Hogelin initiated a traffic stop. As he approached the vehicle, Hogelin observed a cooler, blanket, and pillow in the back seat. The ashtray was overflowing with cigarette butts and there was trash on the floor.

The driver, defendant Sanchez, presented an Arizona identification card but did not have a valid driver's license. Without being asked, Sanchez volunteered that he was driving the vehicle for a friend and had exited the freeway because he was looking for a gas station. Hogelin, however, observed that the vehicle's tank was one-quarter full. Hogelin testified that in his experience, motorists like Sanchez who immediately make voluntary statements unrelated to the reasons for the traffic stop are attempting to put him "at ease."

Before stopping the Pacifica, Hogelin had run the tag through the highway patrol dispatch and learned the vehicle belong to Arturo Martinez. Sanchez, however, told Hogelin the vehicle belonged to his friend Francisco. The paperwork Hogelin received from Sanchez listed the owner as Arturo Martinez and listed the insurance agent as Francisco Banuelos. Hogelin again asked Sanchez who owned the vehicle and Sanchez replied, "It's right there on the card." Sanchez then offered the names Francisco and Julian. Hogelin testified he believed Sanchez "had probably looked at the insurance card, seen the name Francisco on [it], and thought that that was the owner or the insured of the vehicle when in fact [it was] just the name of the insurance agent." He also testified that when he worked for the DEA in Kansas City, it was common to see insurance cards naming Francisco Banuelos as the insurance agent.

Hogelin then returned to his patrol car and ran checks on Sanchez's documents. He discovered Sanchez's driver's license was suspended, and he was wanted in Florida for a tag violation and in Nevada for larceny. Hogelin testified he believed something was "amiss" and decided to give Sanchez a warning, not a ticket, to "gauge what his response was going to be" and whether he would continue to exhibit signs of nervousness after learning he would just receive a warning. Hogelin returned Sanchez's documents, said, "That's all I have. Good luck to you," and then stepped away from the vehicle. He then reapproached

Sanchez and asked if he would be willing to answer more questions. Sanchez agreed.

Hogelin again asked Sanchez about the ownership of the vehicle. This time Sanchez gave the names Francisco and Juan. He also told Hogelin the fuel line on the Pacifica had been fixed in Phoenix. The repair had been prepaid and he had picked the vehicle up from the garage but he could not remember the name of the garage. Sanchez also told Hogelin he currently did not have a way to get back to Arizona but, once he arrived in Kansas City, Francisco would buy him an airline ticket to Phoenix. Hogelin testified that Sanchez's unconventional travel plans, his nervous demeanor, and his inability to correctly name the vehicle's owner caused him to believe Sanchez was transporting something illegal. Accordingly, Hogelin asked if there were any illegal guns, alcohol, or drugs in the Pacifica. Sanchez responded that there was beer in the vehicle and told Hogelin he could "check it out." Hogelin clarified with Sanchez that he wanted to search the vehicle, not just check it, and Sanchez consented. In the course of that search, Hogelin noticed there were screws and bolts that appeared to have been taken off the front bumper area multiple times. He testified this caused him to believe the front bumper and the wheel well plastic had been taken off many times. Additional observations led him to conclude there were drugs in the frame rails of the vehicle.

Sanchez's vehicle was taken to a Kansas Department of Transportation facility where the bumper and grill were removed. During this further search, officers discovered packages containing methamphetamine hidden in the frame rails of the vehicle. Laboratory testing confirmed that 1239 grams of methamphetamine with a purity of 95.9 percent were hidden in the Pacifica. Based on Hogelin's experience and training, he testified that the quantity and purity of the methamphetamine found in the Pacifica indicated it was for distribution and not for personal use.

Sanchez was charged with possession with intent to distribute more than 500 grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1). His motion to suppress the methamphetamine found in the vehicle was denied and he proceeded to trial. At the close of the Government's case, the district court denied Sanchez's motion for judgment of acquittal. The jury found him guilty of the charge and the district court sentenced him to 262 months' imprisonment. In this appeal, Sanchez challenges his conviction, arguing the Government's evidence was insufficient to prove he possessed the methamphetamine.

This court reviews "the sufficiency of the evidence to support a conviction or the denial of a defendant's motion for judgment of acquittal de novo." *United States v. Rufai*, 732 F.3d 1175, 1188 (10th Cir. 2013) (quotation omitted). Evidence is sufficient to support a conviction if the direct and circumstantial evidence and the reasonable inferences that can be drawn from that evidence,

viewed in the light most favorable to the Government, would permit any reasonable juror to find the defendant guilty beyond a reasonable doubt. *See id.* "[W]e accept the jury's resolution of conflicting evidence without weighing the credibility of witnesses," *United States v. Muessig*, 427 F.3d 856, 861 (10th Cir. 2005), because "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011).

To sustain Sanchez's conviction for possession of methamphetamine with intent to distribute, the Government was required to prove Sanchez (1) knowingly possessed the methamphetamine and (2) intended to distribute it.[1] *See United States v. Reece*, 86 F.3d 994, 996 (10th Cir. 1996). Possession may be actual or constructive and the Government's evidence may be either direct or circumstantial. *United States v. Jenkins*, 175 F.3d 1208, 1216 (10th Cir. 1999). Here, the Government relied on circumstantial evidence to establish Sanchez constructively possessed the methamphetamine. "[C]onstructive possession may be found if a person knowingly has ownership, dominion, or control over the narcotics and the premises where the narcotics are found." *Reece*, 86 F.3d at 996 (quotation omitted). It can also be found when the Government shows the defendant had "an appreciable ability to guide the destiny of the drug." *United*

---

[1]Sanchez presents no appellate challenge to the intent-to-distribute element.

*States v. Carter*, 130 F.3d 1432, 1441 (10th Cir. 1997). Further, "it is permissible to infer that the driver of a vehicle has knowledge of the contraband within it." *United States v. Pulido-Jacobo*, 377 F.3d 1124, 1130 (10th Cir. 2004) (quotation omitted). The value of the drugs can also support an inference of knowledge. *United States v. Rodriguez*, 192 F.3d 946, 950 (10th Cir. 1999).

We conclude the Government presented ample evidence from which a jury could find Sanchez knowingly possessed the methamphetamine found hidden in the Pacifica. Sanchez was in sole possession of the vehicle when he was pulled over. He exited the freeway immediately after passing a sign indicating a drug checkpoint was operating ahead. Although he told Officer Hogelin he was looking for a gas station, the exit he chose was an unimproved gravel road with no posted services. He continued down the road even after it would have been apparent there were no service stations ahead. Further, Hogelin testified Sanchez's gas tank was still one-quarter full. The jury could infer from this conduct that Sanchez exited the freeway in an attempt to avoid what he believed was a drug interdiction checkpoint because he knew drugs were hidden in his vehicle.

The Government's evidence also demonstrates that Sanchez gave implausible or incomplete answers to Hogelin's questions about the Pacifica and his travel plans. He did not know the name of the owner of the vehicle even though he told Hogelin the owner was his friend. He stated he was flying back to

-7-

Arizona after delivering the vehicle but he did not have an airline ticket. Further, during his post-*Miranda* interview, Sanchez gave a different account of how he came to be driving the Pacifica. He told investigators he met two men at a party on the street where his girlfriend lived.[2] The men, Francisco and Juan, told him the Pacifica belonged to members of their family and it had broken down. The owners had returned to Kansas City and needed someone to drive the repaired vehicle for them. Sanchez agreed to drive the vehicle to Kansas City in exchange for $500 in gas money, $300 in cash, and a plane ticket back to Phoenix. Although he told Hogelin he exited the freeway in search of fuel, he told investigators he ran out of money the night before he was stopped and got gas by selling his shirt at a Mexican restaurant for $30. Because the post-*Miranda* version of Sanchez's travel plans was inconsistent with the information he gave Hogelin during the traffic stop, the jury could have inferred he lied to Hogelin during the traffic stop in an attempt to deflect further investigation because he knew drugs were hidden in his vehicle.

Sanchez argues the Government's evidence shows only that he was present where the drugs were found, that he exited the freeway in advance of a drug checkpoint, and he gave inaccurate and evasive responses to Hogelin. Even if that was the extent of the Government's evidence, it would be sufficient. This court has held it is permissible to infer that a driver with exclusive possession of

_____

[2]Sanchez was unable to provide his girlfriend's address or phone number.

a vehicle has knowledge of contraband found in that vehicle. *United States v. Levario*, 877 F.2d 1483, 1485-86 (10th Cir. 1989) (overruled on other grounds by *Gozlon-Peretz v. United States*, 498 U.S. 395, 403-04 (1991)). Here, however, the Government presented additional evidence from which a jury could infer knowledge. Although we have set out only a fraction of that evidence, it shows Sanchez came into possession of the Pacifica under an unusual and unlikely scenario, he gave Hogelin an implausible explanation for exiting the freeway, and the story he told Hogelin during the traffic stop was not only inaccurate and evasive, but it also conflicted with the story he gave to investigators during his post-*Miranda* interview. *See id.* at 1485 (holding jury can infer guilty knowledge from conflicting statements). The jury could infer from all of this evidence that Sanchez knew the methamphetamine was secreted in the vehicle and was attempting to forestall its detection.

After review of the entire record, we conclude the Government's evidence and the plausible inferences to be drawn therefrom, considered as a whole and in the light most favorable to the Government, are sufficient to sustain the jury's finding that Sanchez knowingly possessed the methamphetamine found in the Pacifica. Accordingly, the judgment of conviction is hereby **affirmed**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge

-9-