NEWMAN, Circuit Judge,
concurring in parts A, B, C.l, and D, dissenting from part C.2.
I concur in the court’s opinion except for the en banc ruling in part C.2.I respectfully dissent from the court’s interpretation of 35 U.S.C. § 271(f) as excluding all process inventions. The statutory term “patented invention” in § 271(f) has the same meaning in this subsection as in every other part of Title 35: it is the general term embracing all of the statutory classes of patentable invention. The court’s interpretation of § 271(f) to exclude all process inventions is contrary to the text of the statute, ignores the legislative history, is without support in precedent, and defeats the statutory purpose.
35 U.S.C. § 271(f) was enacted to provide remedy to patentees for certain activity conducted outside of the United States, when that activity would be infringing if conducted within the nation’s borders. Section 271(f) specifically concerns offshore activity where practice of a patented invention is “actively induced” by the supply of defined components from the United States, in which situation the supplier is deemed an infringer under § 271(f). The statute is aimed at evasion of United States patents, and is not limited to any particular class of patentable subject matter. The court now holds, sitting en banc for the purpose, that the statutory term “patented invention” excludes process inventions in § 271(f). That ruling, placing a different definition on “patented invention” in § 271(f) than in any other provision of Title 35, is incorrect.

The statute is unambiguous

Section 271(f) contains two subsections. The court today holds that both parts exclude all process inventions from the “patented invention” of the statutory text, without discrimination or exception; the court imposes this reading despite the *1367 plain text of the statute, as follows (with emphases added):
§ 271(f)(1) Whoever without authority supplies or causes to be supplied in or from the United States all or a substantial portion of the components of a patented invention, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.
§ 271(f)(2) Whoever without authority supplies or causes to be supplied in or from the United States any component of a patented invention that is especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use, where such component is uncombined in whole or in part, knowing that such component is so made or adapted and intending that such component will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.
Title 35 defines “inventions patentable” as including all patent-eligible subject matter, including processes:
§ 101. Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirement of this title.
Many sections of Title 35 use “invention” or “patented invention” or “patentable invention” when referring to all of the statutory classes of invention set forth in § 101. E. g., §§ 102, 103, 104, 105, 181, 201, 286, etc.[1] When a specific statutory class is intended it is explicitly stated, as for example in § 271(c) and (g), as explained post. The text of § 271(f) states no such limitation, and presents no ambiguity in its use of “patented invention.” The extreme redefinition here proffered for this subsection, unique within the entire statute, cannot be inferred from the use of “patented invention,” without qualification, in § 271(f).
The Supreme Court has stressed that “in interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.” Connecticut Nat’l Bank v. Germain, 503 U.S. 249, 253-254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). “When the words of a statute are unambiguous, then, this first canon is also the last: ‘judicial inquiry is complete.’” Id. at 254, 112 S.Ct. 1146 (quoting Rubin v. United States, 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981)). The Federal Circuit, too, has recognized that “[i]f the statute is unambiguous, our inquiry is at an end; we must enforce the congressional intent embodied in that plain wording.” Chamberlain Group, Inc. v. Skylink Techs., Inc., 381 F. 3d 1178, 1192 (Fed.Cir.2004). The meaning of “patented invention” is unam *1368 biguously stated in 35 U.S.C. § 101, for the entire statute.
The Supreme Court has previously so held. In Eli Lilly & Co. v. Medtronic, Inc., 496 U.S. 661, 110 S.Ct. 2683, 110 L.Ed.2d 605 (1990) the Court addressed the term “patented invention” as it appears in § 271(e), an infringement provision enacted six weeks before § 271(f). The Court rejected the argument that the term “patented invention” in § 271(e) was limited by other language in the provision to mean only drug patents, holding that “[t]he phrase ‘patented invention’ in § 271(e)(1) is defined to include all inventions, not drug-related inventions alone.” Id. at 665, 110 S.Ct. 2683. The Court stated that if the statute had been intended to apply only to drug-related inventions, “there were available such infinitely more clear and simple ways of expressing that intent that it is hard to believe the convoluted manner petitioner suggests was employed would have been selected.” Id. at 667, 110 S.Ct. 2683.
My colleagues reach the opposite conclusion today, without mentioning the use of the identical words “patented invention” by the same Congress that enacted § 271(e) and soon thereafter enacted § 271(f). It is not reasonable now to rule that the same words used in two adjacent subsections of the same statute, enacted by the same Congress in close temporal proximity, were intended to diverge radically from the statutory definition of “patented invention” and from each other.

The context of § 271(f)

The statutory meaning of “patented invention” is reinforced upon observation of those sections of the Patent Act that are directed to particular categories of invention, as illustrated in § 271 itself. The relationships and balance of the several provisions in subsections of this section demonstrate the statutory use of “patented invention” as the umbrella term for the forms of invention subject to the Patent Act, with narrower terminology used in those provisions that have narrower application. The § 271 subsections deal with the various legislative remedies for various forms of infringement, as Congress acted to plug the loopholes that had arisen or were foreseen.
Reviewing the context of § 271, we start with § 271(a), the general infringement statute, directed to “any patented invention.” Section 271(b) is directed to inducement of infringement of “a patent.” All agree that subsections (a) and (b) apply to all statutory subject matter. Section 271(c) recites contributory infringement by a “component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process”; Congress thus specified how contributory infringement occurs for the statutory categories. Section 271(d) relates to misuse of “a patent,” citing specific commercial practices. Section 271(e) concerns “a patented invention” and although the statute refers to the drug regulatory context, the court in Eli Lilly, supra, explained that this term incorporates the entire subject matter of § 101. Section 271(f) concerns the supply of components of “a patented invention” for use outside of the United States, again incorporating the subject matter of § 101. Section 271(g), in contrast, is specific to the importation or sale of “a product which is made by a process patented in the United States.” Each subsection is directed to different circumstances of infringement, and each recites its subject matter with generality or specificity, as appropriate.
Some amici curiae in this appeal suggested that since § 271(g) specifically mentions practice of a patented process, then “patented invention” in § 271(f) must exclude processes. That thesis is devoid of support. Subsections (g) and (f) are di *1369 rected to distinct situations, for § 271(g) requires importation or sale of the product of a patented process practiced abroad, before infringement can be established under that provision, while § 271(f) does not require importation or sale, but instead requires that a component of the “patented invention” practiced abroad comes from the United States. Subsections 271(f) and (g) address quite different acts, and their subject matter is defined in accordance with the action that the specific statute is designed to remedy.
Section 271(c) is relied upon by the court as somehow requiring that § 271(f) excludes processes. Section 271(c) defines as “contributory infringement” acts that include the sale or importation into the United States of a non-staple article of commerce that is a “component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process,” where the non-staple article constitutes a “material part of the invention” and is known to be made or adapted for the purpose of infringing, within the United States, a patented product or process. The text of § 271(c) illuminates the text of § 271(f), for § 271(c) mentions the statutory classes in terms of how “contributory infringement” works, whereas § 271(f)(1) is directed to inducement, and in the usage “patented invention” in both subparts, § 271(f) states its independent scope. This is not an inadvertent distinction, in view of these heavily scrutinized provisions and their years of legislative consideration. My colleagues appear to have misinterpreted these distinct usages, for the different subsections reinforce that the legislators carefully structured each for a distinct purpose. See Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (“[Wjhere Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion.”).
The various subsections of § 271 reflect the considered legislative approach to plug loopholes in the infringement statute, in the interest of United States patentees and in support of United States innovation. The close relationship among these and all sections of the Patent Act “presents a classic case for application of the normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning.” Sullivan v. Stroop, 496 U.S. 478, 484, 110 S.Ct. 2499, 110 L.Ed.2d 438 (1990) (quoting Sorenson v. Sec’y of Treasury, 475 U.S. 851, 860, 106 S.Ct. 1600, 89 L.Ed.2d 855 (1986)). Nonetheless, the court today discards this rule, and holds that despite its consistent usage throughout the Patent Act, “patented invention” in § 271(f) was intended to have a unique meaning, applicable only to this subsection, to exclude all processes from “patented invention.”
The new loophole here created under § 271(f) will outshine the simple evasion that led Congress and the innovation community to the carefully written texts of sections 271(c), (e), (f), and (g). These texts show that when legislation specific to one or another class of invention was intended, it was explicitly stated in those subsections of § 271. “ ‘It is not uncommon to refer to other, related legislative enactments when interpreting specialized statutory terms,’ since Congress is presumed to have ‘legislated with reference to’ those terms.” Reno v. Koray, 515 U.S. 50, 57, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995) (quoting Gozlon-Peretz v. United States, 498 U.S. 395, 407-408, 111 S.Ct. 840, 112 L.Ed.2d 919 (1991)).

Legislative history and congressional intent

This congressional intent is confirmed by the legislative history. Various propos *1370 als were considered over many years before selecting the text that was enacted as § 271(f). Beginning with the statutory loophole exposed in Deepsouth Packing Co. v. Laitram Corp., 406 U.S. 518, 92 S.Ct. 1700, 32 L.Ed.2d 273 (1972), legislative activity proceeded for a decade as new pitfalls were foreseen, new bills introduced, new hearings held, and new provisions written. For example, the early proposals suggested adapting the language in existing statutory provisions. See, e.g., Hearings Before the Subcomm. on Patents, Trademarks, and Copyrights of the Sen. Comm, on the Judiciary, 93rd Cong. 2871-74 (1973) (statement of Guy W. Shoup) (proposing amendment to overturn Deepsouth and stating that an “attempt has been made to track present statutory language as closely as possible, specifically 35 U.S.C. § 271(b) and § 271(c)”). The early bills borrowed directly from § 271(c), as for instance in S. 2504, initially introduced on October 1, 1973. A committee print of that bill, as amended, shows the following text, with the relevant language emphasized:
(f) Whoever, without authority, makes or sells, within the United States, all of the components of a patented machine, manufacture, or composition of matter, uncombined, intending that such components will be combined outside the United States to constitute the patented subject matter, knowing that if such components were combined within the United States, the combination would be an infringement of the patent, shall be liable as an infringer.
S. 2504, 93d Cong., 2d Sess. (comm, print dated May 8, 1974); see also S. 473, 94th Cong., 1st Sess., § 271(e) (1975) (same text); S. 23, 94th Cong., 1st Sess., § 271(f) (1975) (same text); S. 2255, 94th Cong., 1st Sess., § 271(f) (1975) (same text). Reprinted in Hearings Before the Subcomm. of Courts, Civil Liberties, and the Administration of Justice of the H.R. Comm, on the Judiciary, 98th Cong. 2859-69 (1984) (“Hearing Review ”). It is seen that these early bills did not include processes, but were specific to “a patented machine, manufacture, or composition of matter.”
Subsequent bills, including S.1535, 98th Cong., 1st Sess. (1983), replaced this specific text with the encompassing term “patented invention.” The published record in the Hearing Review shows the understanding that the effect of this change is to cover processes as well as the other statutory categories. Contrary to the majority’s suggestion, the legislative history is not limited to an ambiguous private statement by an “interested party,” see maj. op. at 1365, for the Hearing Review demonstrates that the executive branch considered it important that the statute cover process inventions. The Hearing Review contains a report prepared by the Patent and Trademark Office for the Justice Department, observing that the Deepsouth holding had been applied to process patents in John Mohr & Sons v. Vacudyne Corp., 354 F.Supp. 1113 (N.D.Ill.1973), and stating that “[n]o reasons exist for treating process patents differently from product patents in this regard, and therefore, the Mohr case should also be overturned.” Hearing Review at 2897. The majority has not controverted the clear evidence that the change in statutory language was for the purpose of encompassing processes.
The ensuing change in legislative language, embodied in S.1535, demonstrates the purposeful action to include processes in § 271(f), instead of the more limited scope of earlier versions of the legislation. “Where Congress includes limiting language in an earlier version of a bill but deletes it prior to enactment, it may be presumed that the limitation was not intended.” Russello, 464 U.S. at 23-24, 104 S.Ct. 296 (citing Arizona v. California, 373 *1371 U.S. 546, 580-81, 83 S.Ct. 1468, 10 L.Ed.2d 542 (1963)). This broadening of statutory protection, over the decade of hearings and review that followed the Deepsouth decision, reflects a careful and deliberative process, as additional concerns were exposed and additional subsections proffered, in a collaborative legislative effort to reinforce the value of the patent statute as an innovation incentive. As the Court observed in Oncale v. Sundowner Offshore Serv., Inc., 523 U.S. 75, 79, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998), “statutory prohibitions often go beyond the principal evil to cover reasonably comparable evils, and it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed.” Here, in plugging the Deepsouth loophole, Congress eventually enacted a statute directed to all classes of patentable invention. Yet this court curiously returns to the precise words that were initially proposed and then explicitly superceded.

Plain language and contemporary context

It is a canon of statutory construction that the statute must be understood in its contemporary context. The Court stated in Cannon v. University of Chicago, 441 U.S. 677, 696-97, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), that “it is always appropriate to assume that our elected representatives, like other citizens, know the law ... and that an evaluation of congressional action taken at a particular time must take into account its contemporary legal context.” Despite the clarity of “patented invention” in § 271(f), and the context of concern for statutory loopholes inimical to the interest of innovators in the United States, this court now rules that the legislators intended to preserve a large loophole for patented processes, and never intended to cover more than the narrow Deepsouth loophole for machinery.
Despite the multiple manifestations of legislative intent, in the plain language, the statutory context, and the evolution of § 271(f), my colleagues now rule that in one and only one subsection of Title 35, “patented invention” excludes process inventions. My colleagues state that they agree that the plain meaning of “patented invention” is fixed by § 101, yet they decide that Congress cannot have meant what it said, and that this plain meaning is defeated by hidden meaning in § 271(f). The Court has cautioned that such a statutory interpretation can arise only in “rare and exceptional circumstances,” Crooks v. Harrelson, 282 U.S. 55, 58, 51 S.Ct. 49, 75 L.Ed. 156 (1930) (rejecting argument to ignore literal meaning of a statute based on Holy Trinity Church v. United States, 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226 (1892), and stating that a court may “override the literal terms of a statute only under rare and exceptional circumstances”). Such circumstances are not present here.
My colleagues seek support in the statutory words “components” and “supply.” The en banc court concedes that processes have “components,” but argues that process components cannot be “supplied” from the United States to a foreign operation, because the steps of a process are intangible. However, process information, as well as the results of process steps, are readily supplied from one entity to another. The Court recently noted, in a case under § 271(f) involving products, that “[i]f an intangible method or process ... qualifies as a ‘patented invention’ under § 271(f) (a question as to which we express no opinion) the combinable components of that invention might be intangible as well.” Microsoft Corp. v. AT & T Corp., 550 U.S. 437, 452 n. 13, 127 S.Ct. 1746, 167 L.Ed.2d 737 (2007). My colleagues’ opinion mentions tangibles and intangibles, but does not apply § 271(f) to the claimed process.
*1372 Although the facts of infringement are not developed on the en banc record, enough is before this court to show that the claim is not for an abstract, disembodied process. In addition, the claims include both method and structural aspects. See '288 patent, Claim 1 (reciting method “using an implantable heart stimulator capable of detecting a plurality of arrhythmias and capable of being programmed to undergo a single or multi-mode operation to treat a detected arrhythmia”); Claim 4 (reciting “mode of operation of said implantable heart stimulator”).
It appears that the heart stimulator is supplied from the United States and combined with process steps that are taught from the United States and performed abroad. Although both product and process aspects are involved, the court presents no findings concerning the nature of the components supplied from the United States. It may also be relevant that in Quanta Computer, Inc. v. LG Electronics, Inc., — U.S. -, 128 S.Ct. 2109, 2117-18, 170 L.Ed.2d 996 (2008), the Court reminded us that: “Apparatus and method claims ‘may approach each other so nearly that it will be difficult to distinguish the process from the function of the apparatus.’ ” (quoting United States ex rel. Steinmetz v. Allen, 192 U.S. 543, 559, 24 S.Ct. 416, 48 L.Ed. 555 (1904)). Such complex issues have not been brought out on this appeal, because they were not presented in the winner-take-all question presented for en banc briefing.[2] The court’s new statutory interpretation is far more sweeping than is needed to decide this case, and far simpler than today’s technology deserves. The challenge of applying important and complex law to new facts is poorly met by holding that no law applies to any facts.
It is well recognized that a process has parts, or “components”; this is a general term applicable to all inventions. In Microsoft, 550 U.S. at 449 n. 11, 127 S.Ct. 1746, the Court, in discussing § 271(f), noted that “component” is defined as “a constituent part,” “element,” or “ingredient,” quoting Webster’s Third New International Dictionary of the English Language; and as the majority acknowledges, the Court stated that for a process invention, the “combinable components of that invention might be intangible,” id. at 452 n. 13, 127 S.Ct. 1746. In a discussion of process claims in Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997), where the patent was for a purification process, the Court stated the inquiry as: “Does the accused product or process contain elements identical or equivalent to each claimed element of the patented invention?” Id. at 40,117 S.Ct. 1040. Throughout our own precedent this court has, without quibble, described a step in a process or method as an element of the process or method. See, e.g., Clock Spring, L.P. v. Wrapmaster, Inc., 560 F.3d 1317, 1328 (Fed.Cir.2009) (“In summary, during the 1989 demonstration, all elements of the repair method in claim 1 of the '307 Patent were performed.”); Lucent Techs., Inc. v. Gateway, Inc., 525 F.3d 1200, 1214 (Fed.Cir.2008) (“This court has consistently interpreted ‘including’ and ‘comprising’ to have the same meaning, namely, that the listed elements (i.e., method steps) are essential but other elements may be added.”).
Each step of a process is a component thereof, which, when combined with the other steps, performs the process. In BMC Resources, Inc. v. Paymentech, L.P., *1373 498 F.3d 1373 (2007), this court held that process claims are infringed when some steps are practiced by one entity and other steps are practiced by another, provided that the charged entity controls or directs the conduct of the other, the court explaining that: “A party cannot avoid infringement, however, simply by contracting out steps of a patented process to another entity.” Id. at 1381. The court concluded that the practice of steps of the patented method can be combined, whereby the party that performs earlier steps “supplies” this component to the party that performs the later steps. This principle is commensurate with the application of § 271(f) to processes that are partly performed in the United States. Surely there is no cause to conclude, as the majority concludes, that it is a “physical impossibility” to read § 271(f) as applying to processes. Maj. op. at 1364.
On the established understanding of how processes are performed, it cannot be ruled that the words “component” and “supply” in § 271(f)(1) impart a unique meaning that defeats the plain text of the statute. It cannot be ruled that Congress, along with all of the contributors to this legislation, who understood and intended the use of general terms to embrace all forms of patented invention in Title 35, nonetheless silently eliminated patented processes from “patented invention” in § 271(f).

Sovereignty Issues

I share every court’s concern about legislatively impinging upon sovereign foreign rights. In this case, however, the statutory purpose is to reach the evasion of United States rights by actions that are taken within the United States by entities subject to United States law. The practice in foreign countries of United States-origin technology without any contribution of components from the United States is untouched by § 271(f), whether of process or product. Liability under § 271(f) is based on domestic conduct and intent.
Although protection in foreign countries can sometimes be had by obtaining and enforcing foreign patents, as mentioned in Microsoft, 550 U.S. at 456, 127 S.Ct. 1746, that expensive alternative may not be available. When a patented process is practiced so that some steps are performed in the United States and other steps are performed offshore, the purloin-er of the patented process may escape liability everywhere, for United States infringement is avoided if all of the process steps are not practiced in the United States, and infringement of foreign patents is avoided for the same reason. It cannot be that the legislators intended to enable avoidance of process patents by this ploy, while correcting it for machine patents. A statutory interpretation that results in all process inventions being seriously devalued, is not free of the charge of “absurd result.” See Dewsnup v. Timm, 502 U.S. 410, 427, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) (the interpretation of a statute should “avoid absurd results”).
St. Jude and several amici curiae observe that some countries do not permit patenting of medical procedures, and cite this as a reason for refusing all remedy under § 271(f) for any practice abroad of any infringing process in any aspect of technology. This reasoning is insupportable in the broad thesis proposed by the amici. And as to the specific patent in suit, as Cardiac points out, a medical device such as a defibrillator and its method of use are generally viewed as patentable in most countries.

Concerns of amici curiae

Several amicus curiae briefs expressed concern that a broad construction of § 271(f) could lead to unfair liability for United States providers of computer-based systems. Thus these amici proposed that
*1374 blanket removal of all process inventions— the yes-or-no question here posed by this court — would best meet the needs of their industries. True, this court’s inquiry was insufficiently nuanced, for such a blunderbuss attack on all process technologies is not needed to serve the asserted special needs of information industries. However, my colleagues have over-reacted as well as overreached, for it is not necessary (nor is it our prerogative) to destroy the statute for all process industries, in order to avert potential abuses in unknown circumstances. I agree that for ever more complex technologic facts, vigilance is required to preserve the statutory purpose. As in all areas of evolving interests and policy, if statutory change is warranted, it should be achieved with the participation of all those affected. It is not the judicial role to dump the statute entirely, as overreaction to the facts of one case. The court’s decision today is as unnecessary as it is incorrect.
The simple purpose of § 271(f) is that, for patented inventions, a United States patent cannot be avoided by providing substantial components from the United States while performing some aspect offshore to avoid a technical act of infringement under § 271(a). Section 271(f) draws no distinction between process and product inventions, and such distinction is unrelated to the legislative purpose. As Judge Learned Hand reminds us, “statutes always have some purpose or object to accomplish:”
“[I]t is true that the words used, even in their literal sense, are the primary, and ordinarily the most reliable, source of interpreting the meaning of any writing: be it a statute, a contract, or anything else. But it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning.”
Cabell v. Markham, 148 F.2d 737, 739 (2d Cir.), aff'd, 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945).
The court’s ruling reopens, for process inventions, the loophole that was plugged by § 271(f) for all patented inventions. The extensive legislative record shows consideration of equity, economics, innovation incentive, and international concerns, in the evolution of the text of § 271(f). The en banc court makes no mention of any of these concerns, and does not discuss the consequences of today’s holding in negating the legislative purpose. I respectfully dissent from the court’s statutory interpretation and the decision based thereon.

. E.g., § 102 (use of the term "invention” to refer to statutory subject matter); § 103(a) (use of “invention” as synonymous with "subject matter sought to be patented”); § 104 (describing rights in an "invention made abroad”); § 105 ("invention made, used or sold in outer space”); § 181(d) (defining "invention” as “any invention or discovery which is or may be patentable or otherwise protectable under this title or any novel variety of plant which is or may be protectable under the Plant Variety Protection Act”); § 286 (time limit on damages for infringement of a "patented invention”).

. The court invited briefing limited to the question “Does 35 U.S.C. § 271(f) apply to method claims, as well as product claims?” Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc., No. 07-1296 (order granting rehearing en banc) (Fed.Cir. March 6, 2009).